IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| United States of America | ) | Case No. 0:18-cv-02341-JDA |
| *ex rel Christopher P. Grant*, | ) | |
| Christopher Paul Grant, | ) | |
| Tymekah Danielle Ferguson, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| LabSolutions, LLC;  Minal Patel; | ) | |
| CLIO Laboratories, LLC; Khalid Satary, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a motion for reconsideration by Christopher Paul Grant and Tymekah Danielle Ferguson ("Relators") [Doc. 219] and on filings by Relators [Doc. 216] in response to this Court's Order of October 15, 2025 (the "October 2025 Order") [Doc. 210] concerning Relators' second motion for default judgment against Defendants CLIO Laboratories, LLC ("CLIO") and Khalid Satary [Doc. 187].

## APPLICABLE LAW

**Default Judgment Standard**

Rule 55 of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  "A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment." *United States*

*v. Clark*, No. 3:17-cv-03440-JMC, 2019 WL 1122933, at \*1 (D.S.C. Mar. 12, 2019) (internal quotation marks omitted).

In considering a motion for default judgment, the court accepts as true all well-pleaded factual allegations in the complaint not relating to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6). The court then must "determine whether the well-pleaded allegations in the operative complaint support the relief sought." *Mey v. Phillips*, 71 F.4th 203, 223 (4th Cir. 2023) (cleaned up). As a result, before entering default judgment, the court must "evaluate the plaintiff's complaint against the standards of Fed. R. Civ. P. 12(b)(6) to ensure that the complaint properly states a claim." *Rollins Ranches, LLC v. Watson*, No. 0:18-cv-03278-SAL, 2021 WL 5355650, at \*3 (D.S.C. Nov. 17, 2021) (internal quotation marks omitted).

Once a court has determined liability, the court must independently determine the appropriate amount of damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). To do so, the court may, within its discretion, hold an evidentiary hearing or it may grant the default judgment without a hearing. *Mey*, 71 F.4th at 224; *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998).

Importantly, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should he attempt to limit the scope and size of the potential judgment against him by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger demand award." *Compton v. Alton*

2

*S.S. Co.*, 608 F.2d 96, 106 n.18 (4th Cir. 1979) (internal quotation marks omitted); *see also* 10 Wright & Miller, Federal Practice & Procedure § 2663 (4th ed. 2025) ("Wright & Miller").  Accordingly, "a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded." *United States on behalf of United States Dep't of Health & Hum. Servs. v. Alexis*, No. 5:24-cv-00199, 2025 WL 284637, at *1 (S.D. W. Va. Jan. 23, 2025) (internal quotation marks omitted).  This means that plaintiffs "may not raise new theories of liability on a motion for default judgment," *Flatsix, LLC v. Sylejmani*, No. 23-CV-02289-VKD, 2024 WL 2875098, at *6 (N.D. Cal. Mar. 18, 2024), *Report and Recommendation adopted by* 2024 WL 2875100 (N.D. Cal. Apr. 18, 2024), and defendants cannot be held liable for violations that are alleged only in a motion for default judgment and not in the complaint, *see Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015).

**Rule 54(b) Standard**

Rule 54(b) of the Federal Rules of Civil Procedure governs the Court's reconsideration of interlocutory orders.  Fed. R. Civ. P. 54(b).  Where a district court issues an interlocutory order "that adjudicates fewer than all the claims," the court retains discretion to revise such an order "at any time before the entry of a judgment adjudicating all the claims." *Id*.  "Compared to motions to reconsider *final* judgments pursuant to Rule 59(e) . . ., Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).  The discretion Rule 54(b) provides, however, is not limitless. *Id*.  "[C]ourts have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Id*.  "The law-of-the case

3

doctrine provides that in the interest of finality, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id*. (internal quotation marks omitted). "Thus, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id*. (cleaned up). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Id*. (internal quotation marks omitted).

## **DISCUSSION**[1]

**Motion for Reconsideration**

In this case, Relators do not contend that there has been different evidence discovered during litigation or a change in applicable law. Rather, they argue, for two reasons, that the Court committed clear error causing manifest injustice in the October 2025 Order. [Doc. 219.] The Court concludes that Relators have not satisfied the Rule 54(b) standard with regard to either of the errors they allege.

### *Satary's Liability*

Relators first contend that the Court clearly erred in denying their second motion for default judgment as against Satary. [*Id.* at 3–13.] Relators specifically argue that the Court's finding of liability against CLIO necessarily establishes liability against Satary as

---

[1] The Court will not recite all of the relevant facts in this Order, but they can be found in the October 2025 Order. [Doc. 210 at 1–14.]

CLIO's owner, that the Court erred by applying an overly restrictive application of the Rule 9(b) standard with regard to Satary, and that the Court failed to address their second and third causes of action against Satary.  [*Id.*]

The Court will not repeat its analysis from the October 2025 Order.  The Court only reiterates that the Fourth Circuit's standard for False Claims Act ("FCA") pleadings requires that Relators "have substantial prediscovery evidence of the facts." *United States ex rel. Wheeler v. Acadia Healthcare Co.*, 127 F.4th 472, 488 (4th Cir. 2025) (cleaned up).  For the reasons explained in the Court's prior Order, Relators satisfied that standard regarding CLIO.  [Doc. 210 at 25–28.]  However, although Satary owned CLIO, nothing in the Second Amended Complaint (the "SAC") allows the Court to infer that Relators possessed any prediscovery evidence that Satary played any active role in the alleged scheme.  [*Id.* at 28–31].

Although the SAC contains conclusory allegations that Satary was not merely a passive investor [*see, e.g.*, Doc. 54 at 19 ¶ 2 ("[A]ll Defendants conspired and worked together to obtain [the PGx, CGx, and other tests].")], it alleges no facts indicating that Relators possessed any evidentiary basis to support those allegations.[2]  Such conclusory

---

[2] Relators point to several allegations in the SAC made "upon information and belief," and they rely on this Court's statement that "'a [relator] may state a claim based "upon information," especially if the facts are peculiarly within the defendant's knowledge and control, so long as an inference of culpability is plausible.'"  [Doc. 219 at 6 (quoting Doc. 210 at 18 n.9).]  Importantly, however, this language in the October 2025 Order pertained to the *Rule 8* standard, not the *Rule 9(b)* standard.  [Doc. 210 at 18 n.9.]  As to the 9(b) standard, the Court explained that "factual allegations based on 'information and belief' are generally inappropriate under Rule 9(b) and insufficient to satisfy Rule 9(b)'s heightened pleading standard."  [Doc. 210 at 19 (citing *Breckley v. Amway Corp.*, No. 6:89-540-17, 1989 WL 140397, at *5 (D.S.C. Aug. 24, 1989) (finding the complaint "defective" because it included a number of factual allegations based on information and belief, which the court noted was "generally disallowed of pleadings pursuant to Rule 9(b)")).]

allegations, in the absence of any indicia of reliability, are not well pled under Rule 9(b) and thus cannot support a default damages award. *Breckley v. Amway Corp.*, No. 6:89-540-17, 1989 WL 140397, at *5 (D.S.C. Aug. 24, 1989) (noting that "[e]ven if the complaint allege[d] facts which, if true, support an inference of fraud, [the plaintiff] fail[ed] to 'specifically plead the sources of his information and the grounds for [his] belief'"); *see also id.* at *2 ("Rule 9(b) requires that the complaint must allege with particularly each defendant's culpable conduct."); *cf. Wheeler*, 127 F.4th at 488 (holding that an unadorned allegation that a particular corporate policy existed was inadequate under Rule 9(b) when nothing in the complaint allowed the court to infer that the allegation was true).

Relators argue that they were not required to satisfy the Rule 9(b) standard with regard to Satary's knowledge [Doc. 219 at 10]; *but see Breckley*, 1989 WL 140397, at *4 ("Although Rule 9(b) provides that conditions of the mind may be averred generally, [the plaintiff] must supply a factual basis for [his] conclusory allegations regarding scienter." (cleaned up)), but Relators did not satisfy the Rule 9(b) standard as to any *action* of Satary's either.  Indeed, that Relators had no specific knowledge of any actions taken by Satary appears particularly likely in this case given that Satary was not named as a Defendant until Relators amended their pleading after the filing of criminal charges against him was made public, alerting them for the first time to the fact that Satary was CLIO's owner.[3]  [Doc. 47 at 3 n.2].

---

[3] Relators also assert that the Court did not consider Satary's liability under Relators' second and third causes of action.  [Doc. 219 at 10–13.]  However, the SAC's failure to allege any evidentiary basis for believing Satary played any active role in the scheme would prevent Relators from meeting the Rule 9(b) standard as to Satary under any theory alleged in the SAC.  *Cf. United States ex rel. Scollick v. Narula*, 215 F. Supp. 3d 26, 39 (D.D.C. 2016) ("Courts generally require that the defendant affirmatively act in order to impose liability under the FCA . . . .") (internal quotation marks omitted).

For all these reasons, the Court concludes that it correctly denied Relators' second motion for default judgment against Satary, and Relators' motion for reconsideration is denied as to that issue.

### *Damages Against CLIO*

Relators next argue that the Court erred in limiting the default damages award against CLIO to the 15 claims identified in the SAC. [Doc. 219 at 13–15.] Relators specifically argue that in order to satisfy Rule 9(b)'s particularity requirement, they were not required to specifically identify each test that was the basis for a claim, but rather, it was sufficient for them merely to provide representative examples. [*Id.*] Importantly, however, it is not the SAC's failure to specifically identify other fraudulent claims that precludes this Court from awarding default judgment damages for these other claims. Rather, as the Court explained previously, it is the SAC's failure to allege that Relators possessed any knowledge about any such other claims, in particular, those that may have been made before or after those claims that the SAC identifies. [Doc. 210 at 33 (citing *Wheeler*, 127 F.4th at 497–98; *United States ex rel. Nathan v. Takeda Pharms., N.A., Inc.*, 707 F.3d 451, 458 n.8 (4th Cir. 2013); *United States ex rel. Mastej v. Health Mgmt. Assocs.*, 591 F. App'x 693, 709 (11th Cir. 2014)).]

Relators also contend that, regardless of what facts are pled in the SAC, that *in support of their second default judgment motion*, they have presented the Court with evidence supporting an assertion that CLIO submitted at least 12,136 fraudulent claims. [Doc. 219 at 14–15.] However, as the Court explained in the October 2025 Order, "Relators cannot cure pleading deficiencies in the operative complaint with later-filed supporting documentation, as allowing them to do so would fail to recognize that a claim

brought under the FCA that rests primarily on facts learned through the costly process of discovery is precisely what Rule 9(b) seeks to prevent." [Doc. 210 at 33 (cleaned up).]

Thus, for all of these reasons, the Court concludes that it correctly ruled that Relators are limited to damages from the 15 tests that the SAC identified.[4] [*Id.* at 31–35.] Relators' motion for reconsideration is therefore denied.

**Amount of Damages Awarded and Penalties Imposed Against CLIO**

This Court has held that the well pled allegations in the SAC, taken as true, establish CLIO's liability for claims under the § 3729(a)(1)(A) cause of action concerning the 15 claims the SAC alleges CLIO presented in violation of the Anti-Kickback Statute. [Doc. 210 at 38.] Those 15 claims include eight claims submitted for hereditary cancer screening ("CGx tests") and seven claims submitted for pharmacogenetic testing ("PGx tests"). [Doc. 54 at 21–22 ¶ 3.] Under the October 2025 Order, Relators were required to submit evidence establishing the damages amount. [Doc. 210 at 40.]

Relators have now submitted the declaration of their attorney, R. Mills Ariail, Jr., who represents that for "the time frame in which the 15 identified tests were submitted," "Medicare reimburse[d] on average approximately $6,000.00 per CGx claim and as much as $2,000.00 for PGx claims." [Doc. 216 at 3 ¶ 13.]

A court may determine damages from a default judgment "without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages." *Bobb v. FinePoints Private Duty Healthcare, LLC*, 794 F. Supp. 3d 343, 354 (D. Md. 2025) (internal quotation marks omitted); *see Paddock Indus. v.*

---

[4] Relators also argue that the Government at one point represented that the damages calculation should be based on those 12,136 claims. [Doc. 219 at 14–15.] However, the Government's position on this legal issue is not binding on this Court.

*Paddock Pool Constr. Co.*, No. 0:15-cv-03292-JFA, 2015 WL 7184849, at *3 (D.S.C. Nov. 12, 2015) ("Plaintiff must provide an evidentiary basis for the damages sought."). The Court concludes that Relators' evidence that the average reimbursement for CGx claims around the time of those submitted here was approximately $6,000 is a sufficient evidentiary basis to support a finding of $48,000 in damages for the eight claims for reimbursement for CGx tests.[5] However, the Court concludes that Relators' evidence regarding by the PGx claims is insufficient to support any damages finding as to those claims. That in the 2018 timeframe PGx claims were reimbursed for "as much as $2,000.00" [Doc. 216 at 3 ¶ 13] tells the Court nothing about the typical or average amounts of such reimbursements, let alone how much the reimbursements for the seven claims at issue here were. Thus, any determination of damages from the PGx tests, based on this evidence, would necessarily be based on rank speculation, which is insufficient to satisfy the preponderance-of-the-evidence standard applicable here, *see* 31 U.S.C. § 3731(d). *Cf. Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 402 (4th Cir. 2005); *Templeton v. Bishop of Charleston*, No. 2:18-cv-02003-DCN, 2021 WL 5770306, at *4 (D.S.C. Dec. 6, 2021), *appeal dismissed*, No. 22-1166, 2022 WL 3584879 (4th Cir. Apr. 6, 2022). The Court, accordingly, finds Relators have established that the 15 tests identified in the SAC caused a loss to the Government of $48,000.00.

---

[5] The Court notes that, "given [CLIO's] default, [Relators] cannot conduct discovery to determine" the exact amount of the CGx reimbursements. *J&J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 674 (D.S.C. 2011); *cf. Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264–66 (1946) ("[T]he wrongdoer may not object to the plaintiff's reasonable estimate of the cause of injury and of its amount, supported by the evidence, because not based on more accurate data which the wrongdoer's misconduct has rendered unavailable.").

To the $48,000.00 in actual damages, the Court applies the treble damages multiplier. *See* 31 U.S.C. § 3729(a)(1). Thus, the Court awards treble damages for CLIO's false claims violations in the amount of $144,000.00.

Federal law also entitles Plaintiff to a civil penalty ranging from $14,308 to $28,619 per violation. 31 U.S.C. § 3729(a) (requiring civil penalties "as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990"); 28 C.F.R. § 85.5(a), tbl. 1 (2025) (setting the penalty for violations of the FCA assessed after July 3, 2025, at a minimum of $14,308 and maximum of $28,619); *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 407 (4th Cir. 2013) (explaining each false claim requires its own civil penalty). However, the Excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fifth Amendment may limit the amount of penalties in an FCA action. *See United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387–89 (4th Cir. 2015).

Here, the Court awards penalties against CLIO of $14,400.00 for each of the 15 violations. The Court concludes that this amount for each of the 15 tests is appropriate to both punish CLIO and to serve as a deterrent to individuals and companies inclined to engage in similar misconduct in the future. Fifteen penalties of $14,400.00 equates to a penalty of $216,000.00, which does not violate the Excessive Fines Clause of the Eighth Amendment or the Due Process Clause of the Fifth Amendment.[6] *See Drakeford*, 792 F.3d at 387–89.

---

[6] Relevant to this analysis, the Court notes that CLIO's conduct involved repeated actions, and the harm caused was the result of intentional malice, trickery, or deceit. *See Drakeford*, 792 F.3d at 388–89. As for the disparity between the actual harm and the punitive component of the civil penalties, because Relators brought this action and the

**Attorneys' Fees and Costs**

In this action, Relators also seek attorneys' fees and costs. [Doc. 54 at 32.] Under Local Civil Rule 54.02(A), a fee award petition must "comply with the requirements set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), and shall state any exceptional circumstances and the ability of the party to pay the fee." Local Civil Rule 54.02(A) (D.S.C.). "In cases in which the prevailing party does not obtain a common fund, but fees otherwise are authorized by statute or by judicial doctrines, the primary method used by courts in assessing attorney-fee awards is referred to as the lodestar approach." *J&J Sports Prods., Inc. v. Ultimate Jet-A-Way Sportsbar & Lounge, Inc.*, No. 4:17-cv-1038-RBH, 2017 WL 4923559, at *6 n.1 (D.S.C. Oct. 31, 2017) (internal quotation marks omitted). Under that approach, "petitioning attorneys must present detailed time records of the hours expended by each lawyer indicating the nature of the particular work done by each," and "[t]he failure to do so may lead to the denial or reduction of the award." *Id.* (internal quotation marks omitted); *see Fair Housing Council of Greater Wash. v. Landow*,

---

Government declined to take the action over, Relators are entitled to receive not less than 25 percent and not more than 30 percent of the proceeds of this action. 31 U.S.C. § 3730(d)(2). Under the analysis set out in *Drakeford*, the $48,000.00 in actual damages is entirely compensatory. *See Drakeford*, 792 F.3d at 389. The additional sum of $96,000.00 "resulting from the trebling of actual damages is a hybrid of compensatory and punitive damages." *Id.* Assuming Relators receive the minimum amount allowed by the statute—25 percent of the total recovery—they would be entitled to $24,000.00 of the trebled award, which is considered compensatory, leaving $72,000.00 to be allocated to punitive damages. *See id.* Under this calculation, the portion of damages that is compensatory is $72,000.00 ($48,000.00 + $24,000.00), and the balance—also $72,000.00—is punitive, as is the entire civil penalty of $216,000.00. *Id.* The ratio of punitive damages—$288,000.00—to compensatory damages—$72,000.00—is 4-to-1, which does not exceed "the ratio the [Supreme Court] deems constitutionally suspect." *Id.*; *see State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 425 (2003) (indicating that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety").

999 F.2d 92, 97 (4th Cir. 1993) (requiring that for an attorneys' fee award, an applicant "must make every effort to submit time records which specifically allocate the time spent on each claim" and such "records should attempt to specifically describe the work" so that the court may determine the reasonableness of the fee request); *see also Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621–22 (E.D. Va. 2015) ("Courts faced with excessively vague or inadequate descriptions of tasks in fee claims have reduced fee claims by percentages ranging from 20% to 90%.").

Local Rule 54.03 also provides that "[a] bill of costs may include all items set forth in the relevant statutes and rules . . . and is subject to final approval by the court." A claim for attorneys' fees and related nontaxable expenses "must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). Such a motion shall "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i).

Relators' counsel represent that they have spent a total of more than 3,600 hours on this case and they request a fee award of more than $3,000,000. [Doc. 216 at 6 ¶¶ 24–29, 32.] Yet they, as of yet, have provided almost no detail about how these hours were spent. They merely state generally that they "reviewed documents, researched legal issues, prepared summaries of information obtained, provided the United States with assistance when requested, drafted information for Civil Investigative Demands, prepared legal briefs in support of Relators' legal arguments, participated in court proceedings, and performed additional tasks necessary to obtain a judgment in this matter." [*Id.* at 5 ¶ 20.] Similarly, they seek reimbursement for $25,276.16, but, as of yet, have provided no explanation as to what those costs entailed. [*Id.* at 7 ¶ 33.]

12

Given the lack of detail provided by Relators to this point, the Court will not pass on the issue of fees and costs at this time. Should Relators choose to file a timely petition for attorneys' fees or costs, they should provide the level of detail the Court needs to perform a reasonable review.

## CONCLUSION

In sum, for the reasons explained, Relators' motion for reconsideration [Doc. 219] is DENIED. Based on the Court's granting Relators' second motion for default judgment as to CLIO's liability, the Court enters judgment against CLIO Laboratories, LLC in the amount of $360,000.00 on the first, second, and third causes of action, composed of treble damages of $144,000.00 and penalties of $216,000.00. The Court declines to award attorneys' fees or costs at this time without prejudice to Relators' right to file a timely and appropriately detailed petition.

IT IS SO ORDERED.

<u>s/Jacquelyn D. Austin</u>
United States District Judge

March 24, 2026
Columbia, South Carolina